IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **WESTLAKE ROYAL BUILDING PRODUCTS INC.** § § § | |
| Plaintiff, § | CIVIL ACTION NO. _____ |
| § | |
| v. § | |
| § | |
| **INNOVATOOLS INC.** § § § | |
| Defendant. § | JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff, Westlake Royal Building Products Inc. ("Westlake"), files this its Original Complaint against Innovatools Inc. ("Innovatools" or "Defendant"), and would respectfully show the Court the following:

### Parties

1. Westlake is a Delaware corporation with a principal place of business at 2801 Post Oak Blvd., Suite 600, Houston, Texas 77056.

2. Upon information and belief, Innovatools is a Canada corporation with a principal place of business at 109 Clement Street, Vars, Ontario, Canada K0A 3H0.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121 because this case arises under the Trademark Act of 1946, *as amended*, 15 U.S.C. § 1051 *et seq.*

4. This Court has jurisdiction over the unfair competition claim pursuant to 28 U.S.C. § 1338(b), because this claim is joined with substantial and related claims under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq*.

5. This Court has supplemental jurisdiction over the claims which arise under the laws of the State of Texas pursuant to 28 U.S.C. § 1367(a), as the claims are so related to the Federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

6. Venue lies properly in this district as to Defendant pursuant to 28 U.S.C. § 1391(b)(1). Defendant resides in the Eastern District of Texas within the meaning of 28 U.S.C. § 1391(c)(2) and (c)(3) because Defendant is doing business and has committed acts of infringement in this judicial district and because Defendant may be sued in any judicial district as it is not a resident of the United States.

## Factual Allegations

7. For many years, and at least since 1963, Westlake, and/or its predecessors-in-interest, have made and sold high quality machine tools such as sheet bending brakes, saw tables, and forming tools throughout the United States, and later expanded into Canada, under the trademark TAPCO®. Westlake has a well-established and longstanding reputation for high quality tools. The TAPCO® trademark has come to symbolize the reputation of Westlake and so has become extremely valuable.

8. Westlake has secured many trademark registrations worldwide to protect the TAPCO® trademark, including at least those listed below (collectively the "TAPCO Trademarks").

9. Westlake is the owner of Federal Trademark Registration No. 1,908,137 on the Principal Register for the trademark "TAPCO" for "sheet bending brakes; saw tables; and slitting and forming tools used for cutting and shaping sheet metal and like materials" in Class 7.  A copy of the registration is attached as Exhibit A.  The Mark has been used continuously since its date of first use, which was at least as early as 1963.  The registration is valid and subsisting, uncancelled, and unrevoked.  The registration has become incontestable under 15 U.S.C. § 1065.

10. Westlake is the owner of Federal Trademark Registration No. 1,917,615 on the Principal Register for the trademark "TAPCO" & Design for "sheet bending brakes; saw tables; and slitting and forming tools used for cutting and shaping sheet metal and like materials" in Class 7.  A copy of the registration is attached as Exhibit B.  The Mark has been used continuously since its date of first use, which was at least as early as 1965.  The registration is valid and subsisting, uncancelled, and unrevoked.  The registration has become incontestable under 15 U.S.C. § 1065.

11. Westlake is the owner of Federal Trademark Registration No. 3,518,179 on the Principal Register for the trademark "THE TAPCO GROUP" for "Work tables for machine tools, namely, saw tables and sheet metal cutting tables" in Class 7, "Manually operated tools, namely, aviation snips, tinner snips, caulking [ fun, ] * gun, * utility knife, hand seamer for siding and trim in residential houses, siding snips, sheet metal crimper, snap lock punch; sheet metal cutter" in Class 8 and "Non-metal building products, namely, shutters, shingles, siding, and plastic trim; fasteners for windows; fasteners for siding; fasteners for exterior mounting blocks; storm doors; non-metal exterior mounting blocks; non-metal mount blocks and other non metal exterior blocks for roofing and siding; lattice; roof coverings; non-metal building materials in the nature of plastic blocks for attachment to siding used in connection with the installation of fixtures; water diverters, namely, gutters; vents, namely, gable, roof, hip, ridge and soffit ventilating ducts; door surround

kits comprising exterior decorative moldings and mounting hardware sold as a unit; soffit grille pieces; panel protection strips for protection of seams between adjacent panels for use on residential buildings; plastic building materials, namely, a horizontal wall alignment wedge defining the canted angle of planks covering a wall; alignment strip to be attached to the side of a house to register wall covering sheet material and/or planks, boards and shingles; molding strips, namely, wood, vinyl, plastic moldings; roof stack caps; J-mold trim for use as decorative molding and trim in building construction; construction elements in the nature of inside corner components and soffit components; all of the foregoing goods being non-metal in composition" in Class 19.  A copy of the registration is attached as Exhibit C.  The Mark has been used continuously since its date of first use, which was at least as early as November 2007.  The registration is valid and subsisting, uncancelled, and unrevoked.  The registration has become incontestable under 15 U.S.C. § 1065.

12.     Westlake is the owner of Federal Trademark Registration No. 4,539,670 on the Principal Register for the trademark "TAPCO TOOLS" for "Manually operated tools, namely, sheet bending brakes and components thereof" in Class 8.  A copy of the registration is attached as Exhibit D.  The Mark has been used continuously since its date of first use, which was at least as early as December 1, 2013.  The registration is valid and subsisting, uncancelled, and unrevoked. The registration has become incontestable under 15 U.S.C. § 1065.

13.     Westlake is the owner of Federal Trademark Registration No. 4,691,077 on the Principal Register for the trademark "TAPCO TOOLS" & Design for "Manually operated tools, namely, sheet bending brakes and components thereof, and slitting and rib forming tools" in Class 8 and "Work tables, namely, cutting tables used for siding and trim" in Class 20.  A copy of the registration is attached as Exhibit E.  The Mark has been used continuously since its date of first

use, which was at least as early as December 1, 2013.  The registration is valid and subsisting, uncancelled, and unrevoked.  The registration has become incontestable under 15 U.S.C. § 1065.

14. Prior to the acts of Defendant which form the basis of this Complaint, Westlake has expended substantial amounts time, energy, and money in continuously advertising and promoting the TAPCO Trademarks in connection with its goods and services.  Westlake continues to advertise and promote its goods and services to the trade and the public under the TAPCO Trademarks.

15. As a result of the care and skill exercised by Westlake in the conduct of its business, by extensive advertising and marketing and by consistent high quality goods and services offered under the TAPCO Trademarks, Westlake is now known as the exclusive source of goods and services offered under the TAPCO Trademarks and has acquired an excellent reputation in the industry and extensive customer goodwill.

16. The TAPCO Trademarks symbolize the reputation and goodwill that Westlake now enjoys.  Consequently, the TAPCO Trademarks constitute a valuable asset of Westlake.  Westlake's business depends in part upon the recognition of the TAPCO Trademarks in the industry and on the reputation and goodwill symbolized thereby.

17. On information and belief, in or about the Spring of 2020, Defendant began using the trademark "TAPCO" (the "Infringing Mark"), in commerce, in association with goods (the "Infringing Goods") that are similar to and competitive with those sold be Westlake in this judicial district and throughout the United States, without the authorization of Westlake.

18. For example, Defendants publish and maintain a webpage located at the URL https://innovatools.ca/ ("Infringing Website").  The Infringing Website advertises tools such as modular brake tools and accessories for modular brake tools and other Infringing Goods.  On

information and belief, Defendant has advertised, sold, and offered the Infringing Goods for sale in this judicial district and throughout the United States, prominently featuring the Infringing Mark.

19.     Westlake has not authorized or approved Defendant's use of the Infringing Mark. Westlake has not authorized or approved the sale, offer for sale, or advertising of the Infringing Goods.

20.     As a result of Defendant's unauthorized use of the Infringing Mark, Westlake has suffered and will continue to suffer damage, including, but not limited to, lost revenue, damage to its reputation, and the attorney's fees and costs associated with this action.

**Count I**
**Federal Trademark Infringement**
**(15 U.S.C. § 1114(1))**

21.     Westlake repeats and realleges Paragraphs 1 through 20 as if fully set forth herein.

22.     Defendant has infringed Westlake's rights in the TAPCO Trademarks, in violation of 15 U.S.C. § 1114(1)(a), by conducting various acts, in interstate commerce, without the consent of Westlake, including use of a reproduction, counterfeit, copy or colorable imitation of a registered mark, namely, one or more of the TAPCO Trademarks, in connection with the sale, offering for sale, distribution and advertising of goods, namely the Infringing Goods, which are likely to cause confusion, or to cause mistake, or to deceive.

23.     Defendant has infringed Westlake's rights in the TAPCO Trademarks, in violation of 15 U.S.C. § 1114(1)(b), by conducting various acts, in interstate commerce, without the consent of Westlake, including reproducing, counterfeiting, copying or colorably imitating a registered mark, namely one or more of the TAPCO Trademarks, and applying such reproduction, counterfeit, copy or colorable imitation to the Infringing Goods, among other

things, on or in connection with the sale, offering for sale, distribution or advertising of such goods which is likely to cause confusion, mistake or to deceive.

24.     Defendant's use of the Infringing Mark is likely to cause confusion between Westlake and Defendant as a source of goods and/or services because both the TAPCO Trademarks and the Infringing Mark are the same or similar and are used in association with similar or identical types of goods, namely tools and machine tools.  Further, the Infringing Mark is used in the same or similar channels of trade and is targeted toward the same or similar types of customers.

25.     On information and belief, the use of the Infringing Mark is further likely to create confusion because the Infringing Goods are advertised using the same or similar advertising media as that used by Westlake to sell its goods under the TAPCO Trademarks.

26.     Defendant's acts of trademark infringement are fraudulent, deliberate, willful and malicious, and have been committed with the intent to cause injury to Westlake and its property rights in the TAPCO Trademarks, and to cause confusion, mistake and deception because, on information and belief, Defendant was aware of Westlake's superior rights in the TAPCO Trademarks at the time Defendant began use of the Infringing Mark.

## Count II
## False Designation of Origin
### (15 U.S.C. § 1125(a))

27.     Westlake repeats and realleges Paragraphs 1 through 26 as if fully set forth herein.

28.     Since prior to the acts of the Defendant described in this Complaint, Westlake has continuously marketed and sold its goods and services under the TAPCO Trademarks.

29.     The TAPCO Trademarks are each inherently distinctive and represent goods and services which originate from a single source, namely Westlake.

30. Alternatively, the TAPCO Trademarks have each acquired secondary meaning in the marketplace, because Westlake has extensively advertised and provided uniformly high quality goods and services under the TAPCO Trademarks for a time sufficient to gain recognition. For this reason, the TAPCO Trademarks are now recognized by the public and the trade as representing goods and services which originate from a single source, namely Westlake.

31. Defendants acts are in violation of 15 U.S.C. § 1125(a)(1)(A) because Defendant has on or in connection with goods, namely the Infringing Goods, used, in interstate commerce a word, term, name, symbol or device, namely the Infringing Mark, on or in association with its goods or services, which constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association between Defendant and Westlake, or as to the origin, sponsorship or approval of Defendants goods, services or commercial activities.

32. Defendant's acts are in violation of 15 U.S.C. § 1125(a)(1)(B) because Defendant has, on or in connection with goods, namely the Infringing Goods, used, in interstate commerce, a word, term, name, symbol or device, namely the Infringing Mark, on or in association with its goods or services, which constitutes a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact, which, in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendant's goods, services or commercial activities.

33. Defendant's acts of false designation of origin are fraudulent, deliberate, willful and malicious, and have been committed with the intent to cause injury to Westlake and its property rights in the TAPCO Trademarks, and to cause confusion, mistake and deception.

### Count III
### Unfair Competition
### (Texas Common Law)

34. Westlake repeats and realleges Paragraphs 1 through 33 as if fully set forth herein.

35. The acts of Defendant described in this Complaint, constitute unfair competition and trademark infringement under the common law of the State of Texas. Westlake and/or its predecessors-in-interest, have adopted and used the TAPCO Trademarks in connection with its goods and services continuously since at least as early as 1963. The TAPCO Trademarks identify Westlake as a sole source of goods and services offered by Westlake and distinguishes those goods and services from those of many others.

36. As a result of the care and skill exercised by Westlake in the conduct of its business and particularly in the maintenance of high quality goods and services, by its extensive advertising, and by the extensive and continuous marketing efforts throughout the industry, the goods and services offered under the TAPCO Trademarks have acquired a reputation for high quality. As a result of these efforts by Westlake, consumers and the industry recognize the TAPCO Trademarks to identify Westlake exclusively as a source of high quality goods and services. The TAPCO Trademarks have acquired wide notoriety and symbolize the goodwill which Westlake has created by the sale of dependable and high quality goods and services. Consequently, the TAPCO Trademarks constitutes a valuable asset of Westlake.

37. Subsequent to the adoption and use of the TAPCO Trademarks by Westlake, Defendant began infringing the TAPCO Trademarks by advertising and selling competing and/or similar or identical goods under a trademark, namely the Infringing Mark, that is confusingly similar to and creates the same commercial impression as one or more of the TAPCO Trademarks. Such conduct represents unfair competition and misappropriation and is designed

to cause confusion and mistake and to deceive purchasers into believing that Defendant's goods are somehow sponsored by, provided by, or associated with Westlake.

38. On information and belief, Defendant has attempted to and has passed off Defendant's goods as those of Westlake.

39. Defendant's acts of false designation of origin and trademark infringement are fraudulent, deliberate, willful and malicious, and have been committed with the intent to cause injury to Westlake and its property rights in the TAPCO Trademarks, and to cause confusion, mistake and deception.

## Allegations Of Damage

40. Westlake repeats and realleges Paragraphs 1 through 39 as if fully set forth herein.

41. Because of Defendant's ongoing acts of trademark infringement and unfair competition, described in this Complaint, Westlake has suffered and will continue to suffer damage to its business, reputation and goodwill and to endure a loss of sales and profits in an amount yet to be determined.

42. Because of Defendant's acts described in this Complaint, Defendant has been and will continue to be unjustly enriched by profits it has made through the sale of the Infringing Goods under the Infringing Mark.

43. Defendant's acts of trademark infringement, unfair competition, and violations of Texas common law were and are all willful and deliberate.

44. Unless Defendant is enjoined from its unlawful actions, as described in this Complaint, Westlake will suffer irreparable harm, for which there is no adequate remedy at law.

## Demand For Jury Trial

45. Pursuant to Federal Rule of Civil Procedure 38(b), Westlake demands a jury trial.

## **Prayer**

WHEREFORE, Westlake respectfully requests:

46. That, pursuant to 15 U.S.C. § 1116(a), Defendant, its officers, agents, servants, employees, attorneys, confederates and all persons in active concert or participation with any of them, be enjoined, immediately and preliminarily, during the pendency of this action, and thereafter perpetually from:

   A. Using the TAPCO Trademarks, or any of them, or any reproduction, counterfeit, copy or colorable imitation of the TAPCO Trademarks, including but not limited to the Infringing Mark, in connection with advertising, selling, or offering for sale of goods and services that are the same or similar to those offered by Westlake;

   B. Using the TAPCO Trademarks, or any of them, or any reproduction, counterfeit, copy or colorable imitation of the TAPCO Trademarks, including but not limited to the Infringing Mark, in any manner likely to cause confusion, to cause mistake or to deceive;

   C. Committing any acts, including, but not limited to marketing and advertising under the Infringing Mark, which is calculated to cause purchasers to believe that the goods and services of Defendant are those of Westlake, in whole or in part, unless they are entirely such;

   D. Competing unfairly with Westlake in any manner, including, but not limited to, use of the TAPCO Trademarks, or any of them;

   E. Deleting, destroying, altering, disposing of, concealing, tampering with or in any manner secreting any and all electronic files, web pages, computer

code, business records, invoices, correspondence, books of account, receipts and other documentation relating or referring in any manner to providing, advertising, selling and offering for sale of any goods or services in association with the TAPCO Trademarks, or any other trademark which is confusingly similar to the TAPCO Trademarks, or any of them, including but not limited to the Infringing Mark;

47. That, pursuant to 15 U.S.C. § 1116(a) Defendant be ordered to file with the Court and serve on Westlake, within thirty (30) days after the service on Defendant of such injunction, or such extended period as the Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

48. That, pursuant to 15 U.S.C. § 1118, after final hearing, Defendant be required to deliver up for destruction or, alternatively, to obliterate the Infringing Mark on its entire inventory of Infringing Goods, labels, signs, prints, packages, wrappers, receptacles and advertisements, including but not limited to brochures, video and audio recordings, catalogs, and all electronic content, all electronic files, all webpages and software, and any other material in its possession, custody or control, incorporating any of the TAPCO Trademarks, and any other trademark which is confusingly similar to any of them, including, but not limited to, the Infringing Mark;

49. That, pursuant to 15 U.S.C. § 1116(a), for the next five (5) years, upon ten (10) days' notice, Westlake be permitted to inspect and audit Defendant's business records, including, but not limited to, electronic files, to determine compliance with the Order issued by the Court;

50. That, pursuant to 15 U.S.C. § 1117(a), Defendant be ordered to account for and pay over to Westlake all actual damages sustained by Westlake, all profits realized by Defendant

by reason of Defendant's trademark infringement, as alleged herein, and all costs of this Action, and that all actual damages be trebled because of the willfulness of Defendant's acts;

51. That, pursuant to 15 U.S.C. § 1117, Westlake be awarded prejudgment and post-judgment interest;

52. That, pursuant to 15 U.S.C. § 1117(a), Westlake be awarded its reasonable attorney's fees; and

53. That Westlake have such other and further relief as the Court deems just and proper.

Dated: May 8, 2023.                                    Respectfully submitted,

                                                                                                 s/George R. Schultz
George R. Schultz
Texas State Bar No. 17837500
rschultz@grspc.com

SCHULTZ & ASSOCIATES, P.C.
15770 N. Dallas Pkwy
Suite 475
Dallas, Texas 75248
(214) 210-5940 telephone
(214) 210-5941 facsimile

ATTORNEYS FOR WESTLAKE ROYAL BUILDING PRODUCTS INC.